597 So.2d 526 (1992)
STATE of Louisiana
v.
Joseph JACKSON.
No. KA 91 0033.
Court of Appeal of Louisiana, First Circuit.
March 6, 1992.
Writ Denied May 22, 1992.
*527 Joseph Cheney, Dist. Atty., Baton Rouge, by Lou Daniel, Asst. Dist. Atty., for plaintiff/appellee.
Martin Regan, Baton Rouge, for defendant/appellant.
Before SHORTESS, LANIER and CRAIN, JJ.
CRAIN, Judge.
Joseph Warren Jackson (defendant) was charged by bill of information with four counts of first degree murder, in violation of La.R.S. 14:30. On September 17, 1990, which was a previously scheduled hearing date, defendant withdrew his original plea of not guilty and, pursuant to a plea bargain for a negotiated sentence, pled guilty as charged. Thereafter, on October 1, 1990, defendant filed a motion to withdraw his guilty pleas. A hearing was held on October 8, 1990; and the trial judge took the matter under advisement. On October 26, 1990, the trial judge denied the motion to withdraw the guilty pleas; and defendant expressly waived the three day delay between conviction and sentence. La. C.Cr.P. art. 873. Defendant was sentenced to life imprisonment at hard labor on each count, to run concurrently, without benefit of probation, parole or suspension of sentence. Defendant appeals, urging three assignments of error.
FACTS:[1]
During the early morning hours of July 27, 1989, defendant, his cousin, Freddie King, and a friend, Debra London, drove to the trailer home of William Tennart. Tennart sold narcotics from his home; and, earlier, defendant had given Tennart two gold chains and a gun in exchange for a bag of cocaine. Defendant went to Tennart's home in order to give him money for the cocaine and get his gun back. Defendant knocked on the door and was admitted inside. When he asked Tennart to return his gun, Tennart told him that he no longer had the gun because he had sold it. Defendant, armed with a Ruger .357 revolver, went back outside, sat in his car and "got mad." Defendant went back to the trailer, let himself in, and proceeded to the back bedroom where Tennart was sitting. Tennart told him to get out and began to reach back for something. Defendant thought he was reaching for a gun and shot Tennart twice in the head, killing him. Defendant also shot Angela Sumerall in the neck, killing her. When Freddie King heard shots from the bedroom, he opened fire in the living room, killing Crystal Crawford and Traci Hunsucker and wounding Roger Mixon and Cindy Bacon. During the shooting, *528 Debra London was in the bathroom. After the shooting, defendant, King and London drove off in a car, taking with them approximately two thousand dollars and a satchel belonging to Tennart. The satchel contained the murder weapons.
After piecing together several bits of information from different sources, the officers began to search for defendant in the community. Shortly thereafter, they received a telephone call from defendant telling them that he heard that they were looking for him and that he was at his mother's house. The officers instructed him to wait for them there, and they went to get him. When the officers arrived, they read defendant his Miranda rights and placed him in the car. On the way to the police station, defendant told them that he could take them to where he had disposed of the guns. Defendant took them to an open area where all of them, including defendant, searched for the guns. They did not find the guns at that time. After they arrived at the police station, defendant was again read his Miranda rights and was questioned. During the questioning, defendant confessed to killing Tennart, stating that he just wanted his gun back because it was worth more than the drugs Tennart had given him for it. Defendant also stated that he did not mean to hurt anyone else but that Tennart was the type of guy who could "mess you up." Defendant also stated that he had been drinking beer and smoking cigarettes laced with PCP.
Several hours after his confession, defendant again told the officers that he could take them to where the guns were located. The officers and defendant drove out to the open area again, and this time they found a black satchel containing two handguns. Defendant informed the officers that the bigger gun was his and that the smaller one was his cousin's.
ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO:
In these assignments of error, defendant contends that the trial judge erred in finding that defendant knowingly, voluntarily and intelligently entered guilty pleas and in denying defendant's motion to withdraw his guilty pleas. Defendant argues that he did not understand the law when he pled guilty, that he did not commit a robbery and that he only pled guilty to avoid the death penalty.
Defendant requested a meeting with his family members sometime after he was informed of the state's intent to seek the death penalty. After his meeting, he decided that he wanted to plead guilty in order to avoid the possibility of the death penalty. During the Boykin proceeding, when the judge read the elements of the crime, defendant denied that he committed a robbery. Defendant argues that the gun that he went to retrieve was his and, therefore, this act does not constitute a robbery. However, during the Boykin hearing defendant admitted that he was armed when he entered the trailer and that he intended to get his gun back.
An express admission of guilt is not a constitutional requirement for the imposition of a criminal penalty. State v. McCarty, 499 So.2d 292, 293 (La.App. 1st Cir.1986), writ denied, 505 So.2d 56 (La. 1987). The fact that a defendant believes that he is innocent, and makes such belief known to the court, does not preclude him from entering a guilty plea. See North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). In the instant case, although defendant did not understand that, by legal definition, he had committed a robbery, he admitted conduct that constitutes robbery. Our review of the instant record indicates that the trial judge conducted a thorough Boykin hearing. Moreover, the trial judge has included a per curiam in the record in which he explains that he tried this same defendant for a narcotics violation previously. The judge states that in that trial defendant testified on his own behalf "quite eloquently, convincing a 12 man jury that he was not guilty of two hand to hand sales." The judge states, "[H]is acquittal was incredible, but so was his eloquence." The judge further stated, "It appears to this court that the defendant seeks to manipulate the criminal justice system."
*529 A guilty plea is a conviction and, therefore, should be afforded a great measure of finality. State v. Thornton, 521 So.2d 598, 600 (La.App. 1st Cir.), writ denied, 530 So.2d 85 (La.1988). A trial judge's decision on a motion to withdraw a guilty plea is discretionary and subject to reversal only if that discretion is abused or arbitrarily exercised. State v. Hebert, 506 So.2d 863, 865 (La.App. 1st Cir.1987). For the reasons herein stated, we find no abuse of discretion on the part of the trial judge in accepting defendant's guilty pleas and in denying defendant's motion to withdraw his guilty pleas. These assignments of error lack merit.
ASSIGNMENT OF ERROR NUMBER THREE:
In this assignment of error, defendant contends that the trial judge erred in denying his motion to suppress. Specifically, defendant argues that the police did not have probable cause to arrest him and, therefore, his confession is not admissible. He concludes that the officers did not have enough information on which to base their search for defendant.
When a defendant withdraws a plea of not guilty and enters a plea of guilty, he waives any nonjurisdictional defects. State v. Crosby, 338 So.2d 584 (La. 1976); State v. Mellion, 439 So.2d 586, 590 (La. App. 1st Cir.1983), writ denied, 443 So.2d 1118 (La.1984). However, a defendant specifically may reserve his right to obtain appellate review of pre-plea errors. State v. McKinney, 406 So.2d 160 (La.1981). In the instant case, the record reveals that neither defendant nor his attorney reserved appellate review of the pre-plea rulings on the motion to suppress. Thus, any error related to the conduct of the hearing on the motion to suppress or the denial of that motion has been waived. State v. Ealy, 451 So.2d 1351, 1352 (La.App. 1st Cir.1984). Accordingly, this Court will not consider this assignment of error.
CONVICTION AND SENTENCE AFFIRMED.
SHORTESS, J., concurs. Regardless of the disagreement over the robbery aspects of the crime, this defendant admitted to multiple killings during the Boykin exam.
NOTES
[1] These facts are a composite of information contained in the transcript of defendants confession, the answer to the motion for discovery, the testimony at the probable cause and motion to suppress hearing, and the factual basis for the plea.